**STANDARD CHLORINE CHEMICAL CO., INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 84–11–01651.**

United States Court of International Trade.

March 14, 1989.

Donohue and Donohue (Joseph F. Donohue, Jr. and Russell W. MacKechnie, Jr.), New York City, for plaintiff.

John R. Bolton, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, International Trade Field Office, Commercial Litigation Branch, U.S. Dept. of Justice (Kenneth N. Wolf, New York City), for defendant.

### OPINION

AQUILINO, Judge:

The parties have filed a stipulation, setting forth all the salient facts, which makes

appropriate their cross-motions for summary judgment as to Customs Service classification of two isomers of trichlorobenzene ($C_6H_3Cl_3$) under the mixture catch-all provision for benzenoid chemicals rather than under the item covering trichlorobenzene *eo nomine.*

As imported from France, the merchandise was comprised of approximately 75 percent 1,2,4–trichlorobenzene and 25 percent 1,2,3–trichlorobenzene, with trace amounts of impurities possibly mixed in.[1] The parties agree, among other things, that the merchandise is a "cyclic organic chemical product in liquid form having a benzenoid structure and is not provided for in subparts A or C of part 1, schedule 4, TSUS"[2] and that it is marketed and sold as "trichlorobenzene, technical grade"[3].

Customs classified the merchandise under item 407.16, TSUS, a mixture basket provision, at a duty rate of 1.7 cents per pound plus 13.6 percent *ad valorem,* but not less than the highest rate applicable to any component material. The plaintiff argues for classification under item 402.72 as:

> Cyclic organic chemical products in any physical form having a benzenoid, quinoid, or modified benzenoid structure, not provided for in subpart A or C of this part ...:
>
> Other ...:
>
> Halogenated hydrocarbons:
>
> * * * * * *
>
> Chlorobenzenes, mono-, di-, and tri-:
>
> * * * * * *
>
> Other ...... 9.2% ad val.

As support for its position, the plaintiff offers the following line of argument:

(1) a tariff term must be construed, in the case of a Schedule 4 provision, in accordance with its *scientific or technical meaning;* (2) an *eo nomine* tariff designation includes all forms of the article so described, and (3) an imported article described in more than one tariff provision must be classified under that which most *specifically* describes it.[4]

A tenet of tariff construction is that an *eo nomine* designation, "without limitations or a shown contrary legislative intent, judicial decision, or administrative practice to the contrary, and without proof of commercial designation, will include *all* forms of said article." *Nootka Packing Co. v. United States,* 22 CCPA 464, 470, T.D. 47464 (1935) (emphasis added). Relying on that case, the plaintiff reasons that trichlorobenzene, technical grade *is a form of* trichlorobenzene and therefore entitled to classification under the above *eo nomine* provision, item 402.72.

A review of that provision supports plaintiff's statement that the "merchandise is described in every particular by the various headings and subheadings that precede the claimed tariff provision". Plaintiff's Memorandum, p. 6. The language employed in the primary heading clearly contemplates a cyclic organic chemical product having a benzenoid structure, a description of the merchandise which the parties have stipulated. Inferior substantive headnotes provide for "Halogenated hydrocarbons" and "chlorobenzene ... tri-", respectively, again descriptive of the stipulated merchandise.

The court notes that item 402.72 references tri-chlorobenzene generically, with the individual isomers all falling within the description "chlorobenzene ... tri-" rather than under specific items for each. *Cf. Austin Chemical Co., Inc. v. United States,* 11 CIT —, —, 659 F.Supp. 229, 234, *aff'd,* 835 F.2d 1423 (Fed.Cir.1987). Thus, the plaintiff argues that the tariff term "trichlorobenzene" includes a mixture of its isomers, citing for support 2 I. Mellan, Source Book of Industrial Solvents 185

---

1. *See* Stipulation, para. 5. The numerical prefixes refer to locations of the chlorine atoms, ergo their juxtapositioning vis-a-vis the hydrogen atoms in the isomeric structures of trichlorobenzene. *Compare* Exhibit B *with* Exhibit C. *See also* Exhibit D.

2. Stipulation, para. 22.

3. *Id.,* para. 35.

4. Plaintiff's Memorandum, p. 5 (emphasis in the original).

(1957) and Kirk–Othmer, Encyclopedia of Chemical Technology 260 (2d ed. 1964).[5]

 Tariff terms can be defined normally by their common or commercial meaning, but the legislative history underlying Schedule 4 manifests congressional intent that technical/scientific definitions control classification problems thereunder. *See, e.g., W.J. Byrnes & Co. v. United States*, 61 Cust.Ct. 423, 426–27, 294 F.Supp. 944, 946–47 (1968) (reviewing and construing the legislative history of Schedule 4). Plaintiff's references identify "trichlorobenzene" as a combination of the individual isomers; I. Mellan refers to it as a "mixture of the isomers 1,2,3–, 1,2,4–, and 1,3,5– trichlorobenzenes", while the Kirk–Othmer work describes trichlorobenzene as a "liquid mixture, containing approximately 85% 1,2,4–, 7.3% 1,2,3–, and small amounts of 1,3,5– trichloro-, dichloro-, and tetrachlorobenzenes". Although a third source defines technical grade as a form of 1,2,4– trichlorobenzene[6], the court is persuaded that "trichlorobenzene" includes a mixture of its individual isomers.

Also persuasive is the conclusion reached by the Federal Circuit in *Austin Chemical Co. v. United States*, which affirmed a Court of International Trade determination that the *eo nomine* provision for mandelic acid, item 411.91, TSUS included individual isomers thereof. The CIT had determined that mandelic acid has three isomeric forms, to wit, $D(-)$ and $L(+)$ as well as DL, a combination of the other two isomers. The defendant, the same as here, had argued the *eo nomine* provision encompassed only the DL isomeric mixture and not the individual isomers. The CIT adopted a less restrictive reading of item 411.91 to include the individual isomers along with the DL isomeric mixture. *See*

11 CIT at ——, 659 F.Supp. at 234. The court of appeals affirmed, finding that

> "[m]andelic acid" is a comprehensive term, and there is no indication that Congress intended to exclude from it the $D(-)$ isomer or to limit the term, as the government would do, to DL mandelic acid, which is comprised of an equal mixture of the $D(-)$ and $L(+)$ isomers. 835 F.2d at 1427.

In other words, an *eo nomine* provision for a chemical can cover a mixture of isomers thereof as well as the individual ones.

The defendant attempts to support the original classification by reciting a

> long line of cases [which] support[ ] the proposition that where separate tariff provisions exist for "mixtures" and for other enumerated products, an importation which consists of the mixture of the enumerated products is classifiable under the "mixtures" provision rather than under the provision for enumerated products.[7]

The feature which distinguishes those cases, however, is that, unlike in the case at bar where the separate trichlorobenzene isomers are individually dutiable under a single *eo nomine* provision, each of them pertained to a mixture of two or more separate and unique substances, each of which would have fallen within a specific and different *eo nomine* provision if imported alone. The mixtures of them, as imported, were beyond the scope of those specific provision(s), as opposed to the merchandise at bar, which is "neither more nor less than what is described by the *eo nomine* tariff provision", as stated in plaintiff's reply memorandum, page 4.

The defendant concludes from its review of the pertinent headnotes that "Congress demonstrated its legislative intention by specifically defining the terms 'compounds'

**5.** *See generally id.* at 7–12.

**6.** *See* The Condensed Chemical Dictionary 1041 (10th ed. 1981) ("1,2,4–trichlorobenzene ... Grades: Technical; 99%; mixture of 1,2,4– and 1,2,3– isomers").

**7.** Defendant's Memorandum, pp. 4–5, citing *United States v. Schenker's Inc.*, 15 Ct.Cust. Appls. 460, T.D. 42,645 (1928); *H.B. Thomas &*

*Co. v. United States*, 51 Treas.Dec. 175, T.D. 42,000, *aff'd*, 15 Ct.Cust.Appls. 295, T.D. 42,473 (1927); *Nonnabo Chemical Co. v. United States*, 33 Treas.Dec. 61, T.D. 37,285, G.A. 8082 (1917); *Conron & Co. v. United States*, 8 Treas.Dec. 385, T.D. 25,646, G.A. 5805 (1904), *modified on other grounds sub nom. Wakem & McLaughlin v. United States*, 15 Treas.Dec. 228, T.D. 28,832, G.A. 6736 (1908).

and 'mixtures' in Schedule 4, Headnote 3, TSUS, for the express purpose of 'insur[ing] that the terms are uniformly interpreted' ". Defendant's Reply, p. 3, quoting Explanatory Notes, Schedule 4, *Tariff Classification Study*, p. 3 (1960). Congress, however, also demonstrated intent to limit the use of the term "compounds"[8] and the term "mixtures"[9] to "as used in this schedule", a delimitation not exercised by Congress when it adopted the controlling superior heading at issue herein. Instead, Congress chose "chemical products" to cover goods falling under the headnote, as opposed to other headnotes where the term "compounds" is employed. *See, e.g.,* Headnotes to items 412.76 through 413.40, TSUS ("Aromatic or odoriferous compounds ...". Even the defendant concedes the phraseology adopted "cover[s] both compounds and mixtures." Defendant's Reply, p. 8. The defendant limits this interpretation, however, to isomeric mixtures specifically provided for *eo nomine*, and, as an example, it points to such a provision for metaparacresol, an isomeric mixture of metacresol and paracresol. *See* item 402.28, TSUS.

No legislative evidence has been proferred to support this narrow construction here, however. Indeed, defendant's position is undercut by the specific congressional exclusion of isomeric mixtures from the purview of certain *eo nomine* provisions, such as item 405.44, TSUS, which provides for toluenediisocyanates (unmixed).

In sum, the court is persuaded that the merchandise at issue is a form of trichlorobenzene and thus within the scope of item 402.72, TSUS[10] and that judgment must therefore enter in favor of the plaintiff.

This case having been duly submitted for decision, and the court, after due deliberation, having rendered a decision herein; Now, therefore, in conformity with said decision, it is

ORDERED that plaintiff's motion for summary judgment be, and it hereby is, granted; and it is further

ORDERED that defendant's cross-motion for summary judgment be, and it hereby is, denied; and it is further hereby

ORDERED, ADJUDGED and DECREED that the trichlorobenzene, technical grade imported under cover of the entries that are the basis of this case is correctly classifiable under item 402.72, TSUS; and it is further hereby

ORDERED, ADJUDGED and DECREED that the United States Customs Service reliquidate the aforesaid entries under item 402.72, TSUS and refund any duties paid, together with interest, as provided by law.

---

**8.** The term "means substances occurring naturally or produced artificially by the reaction of two or more ingredients, each compound—

 (i) consisting of two or more elements,

 (ii) having its own characteristic properties different from those of its elements and from those of other compounds, and

 (iii) *always consisting of the same elements* united in the same proportions by weight with the same internal arrangement."

**9.** The term "means substances consisting of two or more ingredients (i.e., elements or compounds), whether occurring as such in nature, or whether artificially produced (i.e., brought about by mechanical, physical, or chemical means), which do not bear a fixed ratio to one another and which, however thoroughly commingled, retain their individual chemical properties and are not chemically united. The fact that the ingredients of a product are incapable of separation or have been commingled in definite proportions does not in itself affect the classification of such product as a mixture."

**10.** The court notes in passing that General Headnote 7 on commingling of articles does not apply in that the individual trichlorobenzene isomers, which comprise the technical grade, are subject to the same rate of duty.